GULF INTERSTATE GAS CO. v.
RAPIDES PARISH POLICE
JURY.

Civ. A. No. 4278.

United States District Court
W. D. Louisiana, Alexandria Division.

Oct. 2, 1953.

Gene M. Woodfin, Vinson, Elins, Weems & Searles, Houston, Tex., LeDoux R. Provosty, Provosty, Sadler & Scott, Alexandria, La., for plaintiff.

J. B. Willis, Gravel & Downs, Alexandria, La., E. Leland Richardson, Fred G. Benton, Baton Rouge, La., for defendant.

DAWKINS, Jr., District Judge.

This cause having come on to be heard on the petition and motion of plaintiff, Gulf Interstate Gas Company, for a preliminary injunction, due notice having been given to, and service had on the defendant, Rapides Parish Police Jury, hearing had, the Court having considered the stipulations of fact, the admitted allegations of the complaint, the concessions of counsel, arguments heard, makes the following

### Findings of Fact

1.

Plaintiff is a Delaware corporation, authorized to do business in the State of Louisiana.

2.

Defendant is a corporate body existing under the laws of the State of Louisiana, is the governing authority of Rapides Parish, Louisiana, and can sue and be sued.

3.

The matter in controversy exceeds $3,000, exclusive of interest and costs.

4.

Plaintiff is authorized to construct and operate facilities solely for the transportation of natural gas for the account of United Fuel Gas Company under a Certificate of Public Convenience and Necessity issued by the Federal Power Commission on May 20, 1953, in docket No. G–2058 (Opinion No. 251).

5.

Plaintiff is constructing and will operate the facilities solely for the transportation of natural gas for the account of United Fuel Gas Company and all gas to be transported by plaintiff is owned by United Fuel Gas Company. Under plaintiff's contract with United plaintiff will be entitled to receive revenues from United only when it has completed the pipeline and tendered transportation service to United.

6.

The facilities now under construction consist of a 30″ outside diameter pipeline extending 860 miles in length from a point near Rayne, Louisiana, through Louisiana, Mississippi, Tennessee and Kentucky, and terminating at a point near the Kentucky-West Virginia border, together with compressor stations, lateral and gathering lines and all other necessary appurtenances.

**7.**

Plaintiff is engaged in the construction of the main gas pipeline aforesaid, and has surveyed a route on the ground which route enters the State of Louisiana at the Parish of East Carroll and continues in a southwesterly direction through the parishes of Madison, Richland, Franklin, Catahoula, LaSalle, Rapides, Avoyelles, Evangeline and Acadia.

**8.**

Plaintiff has obtained permits from the police juries of each of the parishes named in finding No. 7, except the Parish of Rapides, Louisiana, to cross roads and drainage canals under the jurisdiction and control of said police juries. The Department of Highways of the State of Louisiana has granted plaintiff the right to cross under all State Highways in the Parish of Rapides, Louisiana.

**9.**

The pipeline is being constructed and laid under a Pipeline Construction Agreement dated December 19, 1952, between plaintiff and H. C. Price Company, a California corporation, and Houston Contracting Company, Limited, a Texas partnership, contractors.

**10.**

The contract provides for a schedule of performance which contemplates the completion of the project prior to Dec. 1, 1954. It provides "In the event company (plaintiff) is unable to secure right-of-way or material at any place for the construction of said pipelines, or is prevented by legal proceedings or other conditions beyond its control from continuing with the construction of the said pipeline, then company may order contractor to suspend work at such place. In such event or if any of contractor's complete pipeline construction spreads must be shut down by reason of the fault of the company in failing to furnish sufficient continuous right-of-way or material, for so long as contractor maintains a complete pipeline construction spread at such place ready to resume work, company shall pay to contractor the sum of $2,750.00 for each day of shutdown * * *".

**11.**

The estimated cost of the construction of the pipeline facility is more than $129,000,000. In excess of $40,000,000 will be spent on the project in the State of Louisiana, of which amount $20,000,000 had been expended prior to October 1, 1953.

**12.**

To finance the project plaintiff will sell $96,000,000 of first mortgage 4⅛% pipeline bonds to twenty insurance institutions. Approximately $20,000,000 of such bonds will be sold in October of 1953, and the remainder prior to December 1, 1954. The consideration of the bond purchase is a current One Per Cent Per Annum fee to the bond purchaser. The project is being interim financed by a sale of $35,000,000 of equity securities, $15,000,000 of which consist of the plaintiff's Six Per Cent interim notes, now bearing interest.

**13.**

In the course of construction of its pipeline, plaintiff on August 12, 1953, requested of defendant a permit to build the pipeline under and across the Rapides Parish roads and drainage canals, over which defendant has jurisdiction and control, they being mere public servitudes or easements for public use, not property owned by defendant in fee title, according to concessions made by defendant's counsel at the trial. The request was denied by formal resolution of defendant adopted September 8, 1953. The request was renewed on September 10, 1953, and again denied on September 15, 1953.

**14.**

a. Plaintiff will require approximately 33.4 miles of right-of-way in Rapides Parish, and has acquired 29.5 miles of such rights-of-way. The remaining rights-of-way to be acquired are in the southern part of the parish and plaintiff is in the process of acquiring them.

b. Plaintiff has thus far expended approximately $24,535 in acquiring rights-of-way in Rapides Parish.

### 15.

a. On September 8, 1953, the Rapides Parish Police Jury adopted the following resolution:

"Resolution by Mr. Thiels, seconded by Mr. Linzay.

"Whereas, the State of Louisiana is one of the principal producers of natural gas in the southwest, and

"Whereas, this is the only fuel available to the people of this state for home use as well as industrial development and

"Whereas, in the last several years large pipelines have been constructed to take out of Louisiana our natural gas so vital and essential to us and

"Whereas, it is a fact that 80% of our known gas reserves have been committed for export through these pipelines to the north and east, leaving only 20% for all uses in Louisiana and

"Whereas, the continued wholesale exportation of this invaluable resource will prohibit any further industrial development in the State of Louisiana and

"Whereas, the parishes and municipalities are being forced to pay higher prices for natural gas because of this exportation to the north and east, areas which have other fuel and

"Whereas, these pipeline companies have shown no desire whatsoever to co-operate with local governmental agencies and have completely disregarded the needs of the citizens of Louisiana and

"Whereas, in particular the Gulf Interstate Pipeline Company, has requested this jury to grant a right-of-way over the properties under the jurisdiction of this jury and

"Whereas, after conferences with officials of this pipeline company and officials of Columbia Gas Corporation, it was found that they have no intention of cooperating with this or any other parish in an effort to solve our natural gas problem but are only concerned with taking hundreds of millions of cubic feet of this irreplaceable fuel out of our State each day and

"Whereas, the citizens of this State will soon be faced with a shortage of natural gas which will not only cause a tremendous increase in the cost of fuel, as recently experienced by the City of Alexandria, but will forever curtail the industrial development of our State and

"Whereas, every citizen, every public body and every official should be informed of the situation and requested to take action which will prevent the exploitation of our natural resources by large eastern pipeline companies to the detriment of our state.

"Now therefore, be is resolved that the Rapides Parish Police Jury does officially protest the attitude of the Gulf Interstate Pipeline Company as well as Columbia Gas Company and does stand firm in its refusal to grant a right-of-way across public lands under the jurisdiction of this jury and further calls on the citizens of Rapides Parish to refuse to grant rights-of-way across their properties to Gulf Interstate Pipeline Company or any other gas lines used to export our natural gas and

"Be it further resolved that this body requests other police juries of the State of Louisiana to take similar action in order that we might present a united front in our fight to protect our natural resources to the extent that the people of Louisiana will have made available to them an adequate supply of natural gas at a reasonable cost and

"Be it further resolved that the Governor of the State of Louisiana, the Honorable Robert F. Kennon, use the powers of his office to officially oppose, before the Federal Power Commission, any applications now pending or to be presented, for the construction of additional gas pipelines and

"Be it further resolved that copies of this resolution be mailed to other police juries of the State of Louisiana, the Governor, Honorable Robert F. Kennon, officials of Gulf Interstate Pipeline Company and Columbia Gas Corporation."

b. The President of the Police Jury, Mr. Joe D. Brown, testified there were two reasons why he voted for this resolution and has opposed the requests of the plaintiff.

1. He felt that in duty to his constituents, the public of Rapides Parish, Louisiana, he should attempt to obtain for them an unlimited supply of gas for use in this parish, and that the action of the plaintiff in refusing to agree to this condition, in return for the requested permit or franchise, in his judgment was unreasonable.

2. That for the protection of the citizens of the parish from a safety standpoint he felt that the subsequent resolution of the jury, described hereinafter, requiring any pipelines crossing highways, roads, ditches and drainage canals to be laid twenty feet below their lowest point, was a reasonable requirement.

c. The Court concludes from all of the evidence, as a reasonable inference, that had the plaintiff granted the defendant the right to take gas from plaintiff's pipeline, or had agreed to transport gas obtained by defendant from other fields in South Louisiana through its pipeline to Rapides Parish, for use by its citizens, that the police jury would have granted the franchise requested by plaintiff and this suit would not have resulted.

### 16.

An interruption in the progress of constructing the pipeline facilities will cause plaintiff a great monetary loss which cannot be computed exactly at this time. A sum certain which can be computed accurately is the penalty of $2,750 per day for each day that the work is interrupted by defendant. A sum which must be accepted as probable is the payment of interest, and the loss of revenue for the transportation of natural gas. This revenue is the only source from which plaintiff can retire its obligations. Without revenue plaintiff will have to deplete its capital assets for the payment of interest and other charges.

### 17.

The Rapides Parish Police Jury on September 24, 1953, adopted an ordinance requiring all natural gas pipelines having a diameter of 20 inches or greater (and therefore plaintiff's pipeline) to be laid at a depth of not less than 20 feet under each road, drainage canal or ditch under the jurisdiction of the jury and that the depth as it shall apply to canals and ditches is to be from the bottom of the canal or ditch and as to roads from the lowest point on the slope of the road. The stated purpose of the ordinance is to protect the lives and property of the citizens of Rapides Parish. The penalty for violating any "part" of the ordinance is fixed at not more than $5,000 and imprisonment for not more than six months, or both.

### 18.

Plaintiff's pipeline is being constructed under plans and specifications which are standard in the industry and with all the safety factors and devices recognized and used in the industry, and plaintiff's plans and specifications for highway and road crossings exceed those required by the Louisiana Highway Department.

### 19.

No machinery used in the industry is constructed for the purpose of digging pipeline trenches suitable for 30″ pipelines to a depth of 20 feet.

### 20.

The method of installation of plaintiff's pipeline crossings under highways, roads and drainage canals meets the requirements of all regulatory authorities in Texas, Louisiana, Mississippi, Arkansas, Tennessee, Kentucky, Ohio, Pennsylvania, New York, Massachusetts, Connecticut, and Illinois. The proposed method of construction of the crossings under the roads and drainage canals subject to the jurisdiction of the police jury is prepared in accordance with good engineering practices, and in a safe and prudent manner.

The Court further reaches the following

## Conclusions of Law

1. Plaintiff's pipeline facilities are to be used in interstate commerce and subject to the regulations and control provided by Congress under the Natural Gas Act, 15 U.S.C.A. § 717 et seq.

2. Natural gas is a lawful article of commerce and its transportation from one state to another for sale and consumption is interstate commerce.

3. The action arises under the Constitution of the United States, Article I, Section 8, Clause 3, and Amendment XIV, Clause 1, and the Natural Gas Act, 15 U.S.C.A. § 717 et seq.

4. The adoption by defendant of its resolution of September 8, 1953, denying the request of the plaintiff is a discrimination against or regulation of interstate commerce or the right to carry it on, and such action is unreasonable, arbitrary and unconstitutional.

5. When the defendant demands as a condition of the granting of a permit that plaintiff give a written agreement that plaintiff would transport sufficient natural gas through its pipeline to supply the Parish of Rapides with all of its requirements, such a demand seeks to require a surrender by plaintiff of its constitutional right to engage in interstate commerce and is in violation of the Federal Constitution.

6. Defendant's actions in the premises will cause plaintiff irreparable damage. Plaintiff has no adequate remedy at law because the remedy of eminent domain granted by subsection (h) of the Natural Gas Act, 15 U.S.C.A. § 717f(h), is available only as against *owners* of *fee* titles in property and not as against a public body, such as defendant, which holds no more than a public servitude or easement as respects public roads and drainage canals under its jurisdiction.

7. Plaintiff is entitled to a preliminary injunction enjoining and restraining the defendant from interfering with, hindering, or preventing the construction of the proposed 30″ pipeline under and across the public roads and drainage canals under the jurisdiction and control of the defendant.

8. The ordinance of September 24, 1953, has no reasonable relation to its stated purpose, and was not adopted for the protection of lives or property, but was intended to be used for harassment of plaintiff and/or other interstate pipeline companies.

9. The ordinance is unreasonable, arbitrary, and capricious, violates the due process clauses of the State and Federal Constitutions, and

10. The ordinance violates the commerce clause of the Federal Constitution, in that it is an unreasonable, arbitrary and capricious burden upon interstate commerce.

## Decree

Accordingly, it is, therefore ordered, adjudged and decreed, that a preliminary injunction issue herein enjoining, prohibiting and restraining the Rapides Parish Police Jury, its officers and agents, servants and employees, pending the final determination of this action, from interfering in any way with, or preventing plaintiff, Gulf Interstate Gas Company, from constructing, building, and laying its natural gas pipeline under and across the roads, canals and ditches under the jurisdiction and control of the defendant in Rapides Parish, Lousiana, a permit and franchise for which pipeline was sought through application by plaintiff dated August 12, 1953.

It is further ordered, that plaintiff first give security in the sum of $10,000 for the payment of such costs and damages as may be incurred and suffered by the Rapides Parish Police Jury.